Thank you. Madam Clerk, will you please call the next case? 116-0006, Phil Lovato v. City of Chicago. Counsel, you may proceed. Good morning, Your Honor. Good morning. Mr. Collins, I bring back to you the case of Phil Lovato v. City of Chicago. We were here three years ago when you entered a decision on this case, finding that Mr. Lovato had not waived his right to an 8D1 award. And you remanded the case back to the Commission with the words, We believe the question of Lovato's entitlement to an award under 8D1 appears from the evidence in this case. When I read that, I took that as an instruction to the Commission to enter an 8D1 award. But that's not what the decision said. The decision specifically said we're not telling them they have to enter an 8D1 award. We're just telling them to decide the issue. You then went on to that, and I want to get to that if you'll allow me to. Okay. Okay. What I've always kind of scratched my head about is that your decision and other decisions in this court relating to 8D1 awards always begins with an analysis from the Gaglianetti case. However, when I see decisions from the Industrial Commission, I don't see them citing the Gaglianetti. And that's the only explanation I can give for why the Commission didn't enter an 8D1 award here. I'll say at this point that I know of no reason expressed in the Workers' Compensation Act why the Commission could deny an 8D1 award after there's a finding that both prongs of an 8D1 award exist in the evidence. I find nothing in any of the case law that says or indicates when the Commission can deny an 8D1 award when there's the evidence of both prongs of an 8D1 award exist in the evidence. Without those, I have no idea when or why or whether the Commission might be right on denying an 8D1 award when the appellate court says entitlement to an award under 8D1 appears from the evidence in this case. I go back to Gaglianetti because Gaglianetti was much firmer about this issue. When they examined it, they said, We conclude the plain language of 8D prohibits the Commission from awarding a percent of a person as a whole award when the claimant has presented sufficient evidence to show a loss of earning capacity. Well, that's the key issue, is it not, in the way it's differential? Did the claimant sustain an impairment of his earning capacity, right? I'm sorry. I'm sorry. That is the key issue, is it, whether or not the evidence established the claimant sustained an impairment in his earning capacity. That is the issue, isn't it? Well, that was the issue when we were here three years ago. Well, still the issue went back to the Commission, wasn't it? As I recall, it was remanded for them to determine on the merits if he was entitled to a wage differential. Wasn't that what the remand was for? I'm sorry, Justice. I didn't interpret it that way. Well, how did you interpret it? Well, my personal opinion is that the Commission is getting subjective about these things. They're very critical about job searches. There was a lot of criticism of my client in this case. There's criticism of my clients in other cases. There was a lot more criticism of Leonard in the Leonard case that you decided exactly the same way and sent it back with exactly the same order. Wait a minute. Let me read you something. And I don't understand how you could come to the conclusion you came to. I'm reading you word for word from what we wrote. Yes. We wish to be clear that we are not instructing the Commission on the conclusion it should reach on remand, only that it should decide the issue. In the event that the Commission determines that the claimant is entitled to a wage differential award, it should make the award. If, on the other hand, the Commission decides that he's not entitled to a wage differential award under 8D1, it's directed to reinstate its award of PPD benefits for 35 percent loss of use of a person as a whole. How in heaven's name could you interpret that to suggest we sent it back and told them they had to award wage differential? Because I'm reading this other language that you wrote. We believe the question of entitlement appears in the case, in the evidence in this case. It's a question. There's no question it's a question. And I couple that with I know of no reason why you can deny an 8D1 award. That's a different thing. Hold on. That's different than saying we told them they had to do it. Now, you've got to be fair with us. There's no question. We told them they didn't have to do it. They had to decide it. We didn't tell them they had to award it. Okay. Now, you can turn around and argue that based upon what was presented, they should have awarded it. That's a fair argument. But you can't sit there and tell us we told them they had to decide it. That's not fair. Well, I think I do stand here telling you that. Well, do. Then tell us that. But don't be unfair with us and tell us we told them they had to do it. Well, there's no question you've already decided there is a wage loss here and there is an impairment, I mean a disability from which the man can't go back to work. Again, you did the same thing in the letter and sent it back with the same instruction. I don't know what the commission may have done with the letter. But in this case, they go back to the being critical of a job search, which we discussed last time we were here. And there is an area that could use some clarification. Gale Yannetti says there is no affirmative requirement under Section 8D1 that a claimant even conduct a job search. So I said in my brief, and I would say it today, that if there's no requirement for a job search, then it's wrong for the commission to criticize whatever kind of job search a man may have done or whether he had done none at all. My problem with this is, and the reason I think the commission doesn't always start with Gale Yannetti, is because of that word, no affirmative requirement, that word affirmative. I was hoping in bringing this case back here that you might clarify whether or not a job search is necessary and hopefully would say it's not necessary per Gale Yannetti, so that other cases where people sit in limbo in this vocational rehabilitation and job searches doesn't hold those people and the litigation goes on and on and on and the costs go up and up and up, so that one who once can establish he cannot return to the kind of work he was doing and in fact has suffered a wage loss can move forward, get a decision, end the case, reduce the stress of litigation in a man's life, woman's maybe, and allow them to move on and make their own decisions. I think it's wrong, Justice Hoffman, for the commission to criticize the job search here, as they certainly did in Leonard, and I appreciate you following the decision in this particular case and making the Leonard decision, but you may see these things coming back unless we can get some clear clarification, and again I'm going to repeat, I know of nothing in the law or the statute that says when a, under what circumstances a 8D1 award can be denied, when the two prongs of an 8D1 award exist in the evidence. Going back to Gale Yannetti, it says, the word shall in section 8D1 lead us to conclude that when a claimant proves he is entitled to a wage differential award, the commission is without discretion to award a section 8D1 award instead. Can I ask a question? Sure. What are we to do with the commission's finding on remand that suggested that the commission had absolutely no knowledge of what this man's physical capabilities were, so they couldn't make a determination as to whether he was capable of returning to his normal occupation, or in the alternative, what his actual earning capacity would be? What should we do with that? What should we do with that? I think we have to go back to the industrial commission's decision in the first review. When the industrial commission wrote in its decision, although the petitioner is not permanently and totally disabled, petitioner sustained a substantial physical disability as a result of his work injuries. Petitioner's treating physician, Dr. Slack, diagnosed him with persistent low back derangement. Lumbar spine MRIs reveal multilevel disc bulges. The commission notes the petitioner uses a cane in accordance with the recommendations of Dr. Perns and Dr. Slack. Also, petitioner has permanent restrictions which prevent him from returning to his employment with the respondent. That becomes the law of the case at that point. What do we do with this? In this case, there was no comprehensive vocational rehabilitation assessment or implementation of any vocational rehabilitation program. Petitioner did not exert consistent effort in his functional capacity evaluation. He did not perform a diligent job search. Therefore, the commission does not know petitioner's actual physical capabilities or his earning potential. Even if the commissioner will accept the cursory labor market survey provided by the respondent, the range of earning potential posited in that survey, minimum wage $20 an hour, is too great to assess a precise and appropriate wage differential. Therefore, the commission declines to award the wage differential. What they're saying is they didn't have enough information to award it. I think we covered that issue the last time we were here, too. There was a lot of discussion about, not with me, with my opponent, and I believe you have questions for him, of whether or not there is evidence of loss of income or earning capacity. And we talked about how it was presented by the respondent in this case, and you asked the respondent a number of questions about counsel. You put the evidence in. The evidence exists for everybody. Now, Galeanetti never did both. He did his own job search. He actually ended up getting a job himself, but then there was apparently the respondent came in and said, yeah, but he didn't get as good a job. I think that's what happened, because then they went on to say that they had to look at what his earning potential was or earning capability. In letter, he went to great lengths to add to the decision that he did vocational rehabilitation by EPS, Edward Stephan. Stephan testified. There was another guy who testified. His name began with a B, and they testified how they had this wide range of what he could make, but he had to reconsider, and they brought it down there. Evidence presented by the defense, just like in this case the evidence of wage loss or what he was capable of earning, came from the defendant in both cases. And in both cases, you found that the question of entitlement exists in the record or in the evidence. Could I ask another question? Sure. It would appear as if the commission's decision on remand was based upon their review of his testimony of the original arbitration decision. Is that not correct? I'm just not sure I fully understand that question. How did the commission come to its decision? It reviewed your client's testimony in the first case in the arbitration decision, did they not? Oh, don't take me back to that. They did it, didn't they? There's a line in the arbitrator's decision that still eats at me, and this case was tried in August. Excuse me. The original arbitration here occurred in August. Just stay with me, if you will. I'm Italian. My client is Italian. My client sits in the chair. Can you think of anybody that has a better suntan in August than an Italian? And yet the arbitrator wrote, this man comes in with a beautiful suntan. He looks more like a relaxed retiree than he does like an injured employee. And that line still bothers me. Now back to your question. My question is, but that's not where I'm going. My question is, the commission reviewed the testimony of your client at the original arbitration hearing and FCE reports, et cetera, and so on, and came to the conclusion that they had insufficient information to determine what his earning capacity was, and therefore they couldn't give him a wage differential. And yet the record that we were supplied with in this case does not contain any transcripts of the proceedings before the original arbitrator. It doesn't contain anything from the original arbitration. You gave us nothing more than the original arbitrator's decision, the original commission's decision, and the new decision. And we don't have the transcripts of the original arbitration proceeding. You never gave them to us. Now what are we supposed to do? I can't explain that. Well, but you're the one that filed the record. I don't have any recollection of not having a record. I mean, are we going back four years or did they fail to bring it over? I don't know. Well, it wasn't filed. It was never filed. Record on appeal contains no transcript of the arbitration proceeding, no report of proceedings, no bystander's report, no agreed statement of facts. It doesn't contain a transcript of the claimant's testimony or any of the exhibits that the commission relied upon in determining the claimant's request for a wage differential award. Nothing. Absolutely nothing. I can't answer your question. I don't know if it was the record here the first time. But I'm going to rely on your order. And I was happy with that. I was getting patted on the back. I think I opened up something by saying that when you seek a perm total, which is what we were seeking, that that is a wage differential award. So now when I go to trial on a case, I say, you're asking the arbitrator for a wage differential award in the form of a permanent total or a wage differential. There's no new evidence since you sent this back to the commission. So, therefore, I don't know that we have no further proceedings before the commission. So I would believe that you have everything you need in order to make this decision. Not when they turned around and said, we have reviewed his testimony, and this is what we find that it doesn't show. So we've got to look at it to find out whether it showed it or it didn't. And in this particular case, and you've got an appendix in this case. Unfortunately, it doesn't contain an appendix of the record on appeal. It only contains, or pardon me, it does. And if you take a look at your own appendix, it's page 11 of your appendix. Decision on review, decision on appeal, decision on remand, request for summons, summons, summons,  absolutely nothing about the transcript of the proceedings before the arbitrator. If we had decided the issue, Mr. Spangolo, we never would have sent it back. We never would have sent it back if we decided that issue. But you did it with Leonard. That's where I'm confused. Well, Leonard isn't your case. Your case is Lovato. So let's determine what we did in Lovato and what the commission was supposed to do. They were supposed to look at the, they didn't decide the question of wage differential. They didn't even do it. We turned around and said, wait a minute, there is a question based on these facts, is the wage differential, now go and decide it. They decided it based upon the testimony of Lovato and the exhibits that you produced at the arbitration. Now they turned around and said we can't, he didn't sufficiently prove his earning capacity and therefore we can't grant him a wage differential. On review, the question is, did he sufficiently prove it or didn't he? And the problem we have is we don't have his testimony. We don't know whether he did or didn't. And so now what do we do other than fall back on the old rule that we presume that their decision is supported by the evidence? Let me respond to that by saying I presume, maybe correctly, maybe incorrectly, that from your last decision where the two prongs of an 8D1 exists and Gallianetti says the commission does, can not, shall enter, what's the other word they used, prohibited from going to an 8D2 award. I think in another place they say must. They sent it back only for determination of the dollar amount. But taking your order from when we were here last time and taking the language from if we have two bow prongs. Counselor, you will have time to reply. You're over your time right now. I'll let you finish your statement. I did, but I'm trying not to. And if Gallianetti says they cannot, then I would think that you have enough to make this decision with or without any further looking at the testimony. So with that, I'll conclude for now. You can address that more on reply. Yes. Thank you. Thank you, Counselor. Counselor, you may respond. Good morning, Your Honors. Counsel, may it please the Court. On remand, the commission followed this Court's instruction to consider Mr. Lovato's entitlement to a wage differential award. Its decision not to grant a wage differential is not against the manifest weight of the evidence. As the commission explained, Mr. Lovato did not participate in a vocational rehabilitation program. He did not put forth consistent effort in his functional capacity evaluation, and he did not undertake a diligent job search. And so for all these reasons, the commission could not ascertain Mr. Lovato's earning capacity. So obviously you disagree with his fundamental premise that the evidence was already there to decide the issue, correct? Absolutely, Your Honor. That seems to be the point of departure here. You say the evidence was already in the record. You're saying it wasn't on the earning capacity. Correct. As this Court explained in its first decision, the question of Mr. Lovato's entitlement to a wage differential appears in the record. But whether Mr. Lovato has sufficiently proven an actual entitlement to a wage differential is a different matter altogether, and that's why this Court remanded to the commission so that it could decide that factual question in the first place. On the record, that was in existence at the time. Yes, that's correct. In theory, was there any avenue to reopen, to produce evidence beyond the state of the record of the prior decision? I don't believe so, Your Honor, because... Procedurally. As this Court decided in its first decision, the record as it existed the first time the case came up sufficiently presented a question of Mr. Lovato's entitlement to a wage differential. And therefore, the commission had to decide that factual question because the question appeared in the record. And so there wasn't an avenue for the presentation of additional evidence. Furthermore, as the commission also explained, the city's job survey listed jobs with a range of wages that was too great for the commission to arrive at a precise wage differential. Eight to $20? Was that the range? That's correct, Your Honor. And that shouldn't be surprising because the city presented this evidence initially, not to establish what Mr. Lovato is capable of earning. Can I ask a question? How do we know all this stuff? Your Honor, personally, I scanned the record from the first episode. Is this a separate appeal? Is this a new... This is a random appeal. The problem that we have here is all the things that you're telling us, it's probably apparent somewhere, both sides, it's apparent in the original record from the original appeal. Unfortunately, no one gave that to us on this appeal. So now the question is, how do we decide it? And the only fallback rule that we have is the Supreme Court has suggested that when we're furnished with an insufficient record, the only thing that we can do is imply that whatever order was entered below was entered based on the evidence that was before it. We don't have this evidence. When you talk about manifest weight of the evidence, it means you've got to look at the evidence. We have none to look at. That's correct. And, of course, it's the appellant's obligation to present a record on appeal that supports the appellant's claims of error. And so any insufficiency of the record is the responsibility of the appellant. But you're saying that if there were some mechanism or if there was some methodology, whatever, well, anyway, assuming that the record as it existed in the first separate appeal is the record that was looked upon in this appeal, you're saying that the state of the record would not support a wage difference? Absolutely, Your Honor. Yes. For the reasons? Because there is indivisible proof of an impairment of earnings, which is part of the claimant's burden to establish a wage differential. There is nothing in the prior decision of the commission? Well, it is kind of an interesting conundrum here. Because it's sent back to consider the issue, correct? Correct. And so the record that was presented when it was sent back cannot be modified, correct? Correct. And although the record presented the question, it's a separate matter whether the record showed that Mr. Lovato had proven. Sufficiently so. Yes. So it was we view this court's initial decision as an instruction to the commission to consider an issue that it had to consider. It wasn't waived, look at the evidence and decide the wage differential. Correct. They did that. But now you have no record to cite to, correct? That we don't, to be sure, we don't have the record. On this appeal, I mean. Yeah. We have the facts as recounted in this court's initial opinion, which is part of the record. I mean, obviously it's. I knew the appellee was saying it's not up to, we don't have to prove anything. That's right. It's not our burden. Correct. This is a manifest weight issue. So if Mr. Lovato believes that the commission's finding on remand is against the manifest weight, then he had to present a record that showed that fact. A record that showed evidence. Correct. So for all these reasons, the commission correctly refused to engage in a speculative wage differential award given how sparse the record was. And for all these reasons, unless the court has any further questions, the commission's decision on remand should be affirmed. Thank you. Thank you, counsel. Counsel, you may reply. Just as far as my brief, and generally what it doesn't tell me is when I do an appeal such as this, I do my draft copy and then I come down here to the clerk's office. I never take the record out of here. I sit at the little table that's there, and I go through it and I put in all of the R.C. dash so-and-so. I'm looking at mine. I do not see those kind of references, but there's a reason for that. I probably didn't have to pull the transcript in this or the record in this particular case because I viewed it as simply a question of law. You tell the commissioner to do something. I say they didn't do it. I say the law doesn't give them a legitimate reason for saying what they said. So I viewed it totally as a question of law. Counsel raised he claims that there's a reason for turning it down because the evidence he put in gives a range of possible earnings that's too great. I don't know what too great is. I don't know what too great is. I don't know what too small is. The fact is it's his evidence, and now he stands here and wants to argue with his own evidence. It doesn't make any sense at all. I'll tell you what does make sense. This Workers' Compensation Act has already provided for this. It doesn't say you have to prove a specific dollar amount. It says the average amount, and we certainly don't have to be geniuses to figure out the average amount between, what was it, $8 and $20. Five to 20. Whatever. Whatever it is. Average is add the two, divide by two. That's average. That's what the law says to do. There's no reason that can't be done here. I'm asking that you reverse the commission, and at this point, please tell them that or wage differential award. Thank you. Thank you, Counsel Ball, for your arguments in this matter. It will be taken under advisement. Written disposition shall issue.